# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEITH DAVIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-98** |
| **ST. CHARLES PARISH CORR. CENTER, ET AL.** | **SECTION "S"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Keith Davis, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. He named as defendants the St. Charles Parish Correctional Center, Warden John Nowak, Sheriff Greg Champagne, Assistant Warden Alvin Robinson, Captain R. Dale, Lieutenant LeRoy Hunter, and Lieutenant Shannon Brooks.

In the complaint, plaintiff states his claims as follows:

Prisoners State of Federal Civil Rights Acts of 1983 Prisoners are Denied Due Process Procedure Civil Tort Freedom of Expression (Grievances) (1.) Prisoner Deny Constitutional Rights to Expression Themselves by way of Administrative Remedy Procedural (2.) Prisoners are Free From unreasonable Searches and Seizzers if Administrative officials Act in Accordance with D.O.C. Policies This Facility Willfully Searches ans Seizures ideas without the present of the Prisoners or Dorm Rep only in case of an Emergency can officials over step boundary and Searches a prisoner properly while not present. (3.) The Istitution in Violation of Due Process Charging Prisoners for hair cuts, Unlicensed barbers and Against Dept. of Corrections policy State prisoners Housed at a Parish Jail, are Denied Same Treatment as State Prisoners in State Facility, State Facility provides weekly hair cuts free of charge, Nelson Coleman Correction Center is Charging inmates for hair cuts, and the barbers are not Licencse barbers, they are trusty Inmates. (4.) Dormitories overcrowded in violation of a fire Hazard. (5.) Dormitory only has two

Ventilation Vent For 52 inmates. (6.) Prisoners (State and Pre-Trialers) Housed in Same Dormitory With, and without Sentence awaitting trial. (7.) Prisoners must have a Certain amount of money in there account to receive the proper Medical Treatment, in order to receive the proper Dental Service you need a certain amount of money to receive Dental Care. (8.) Unsanitary water Fountains, inmates using one ice cooler one time per day, Rest Room 4 Feet From dinning area 4 toilets leaking water all over the Floors unsanitary practice. (9.) State Housed Prisoners are Denied of Programs intentionally being Denied of the Proper Rehebilitation Limited progams, Poor Legal Advisors. (10.) State Prisoners are Limited, not enough programs no trade schools. (11.) Living Quarters - Unsanitized. (12.) Bed Area - bunk beds know ladders accidents can occur. (13.) State & Federal Prisons Civil Rights violations Denied Procedure Process For trusty staff refused to screen me because I wrote an A.R.P. against the Educational Staff For descrimination and after I wrote A.R.P. I was terminated From school For two weeks and I was threatin for writting them up.[1]

As relief, he requests:

> Im Seeking this Honorable Court to Reward me with US Currencies Under these Circumstances in the Sum of 25,000.
> (1) Mental Anguish
> (2) Cruelty and Punishment
> (3) Defamation of Character
> (4) Also I would like to be Transfered to a State Penal Correctional Institute who can provide me me with better training skills and proper rehabilatation.[2]

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

---

[1] Rec. Doc. 1, pp. 4-6.

[2] Rec. Doc. 1, p. 4.

2

>(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>    (i) is frivolous or malicious;
>    (ii) fails to state a claim on which relief may be granted; or
>    (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches

Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[3] the Court nevertheless finds that, for the following reasons, the complaint must be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

## II. Forms of Relief Requested

As a preliminary matter, the Court notes that the two forms of relief plaintiff has requested are not available to him in this proceeding.

Plaintiff first requests $25,000 in damages for mental anguish. However, federal law provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); see also Herman v. Holiday, 238 F.3d 660, 665-66 (5th Cir. 2001). Plaintiff has not alleged that he suffered a physical injury caused by the various

---

[3] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

conditions about which he complains. Without such an injury, he is barred from recovering compensatory damages.

Plaintiff next requests that the Court order that he be transferred to another facility. The Court has no authority to issue such an order. Placement of state prisoners is a matter left to the discretion of state officials. A prisoner has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).[4]

That said, the Court nevertheless notes that plaintiff's claims also fail for various other reasons, as is explained below in detail.

---

[4] Moreover, the Court notes that Louisiana law expressly provides: "[A]ny individual subject to confinement in a state adult penal or correctional institutional shall be committed to the Louisiana Department of Corrections and not to any particular institution within the jurisdiction of the department." La.Rev.Stat.Ann. § 15:824(A). State law further expressly provides that, when necessary, state prisoners may be confined in parish jails. La.Rev.Stat.Ann. § 15:824(B)(1)(a).

### III. Failure to State Claims Against Proper Defendants

#### A. St. Charles Correctional Center

Plaintiff has named the St. Charles Correctional Center (which is also known as the Nelson Coleman Correctional Center) as a defendant in this lawsuit. That is improper. The correctional center is a building, not a "person" subject to suit under 42 U.S.C. § 1983. Lathers v. Nelson Coleman Correctional Center, Civ. Action No. 07-2891, 2007 WL 1702780, at *2 (E.D. La. June 11, 2007); see also Elsensohn v. Jefferson Parish Correctional Center, Civ. Action No. 09-2759, 2009 WL 5088744, at *2 (E.D. La. Dec. 23, 2009); Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008); Francis v. United States, Civ. Action No. 07-1991, 2007 WL 2332322, at *2 & n.4 (E.D. La. Aug. 13, 2007); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); Martinez v. Larpenter, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D. Pa. 1976).

#### B. Remaining Defendants

Plaintiff also lists Warden John Nowak, Sheriff Greg Champagne, Assistant Warden Alvin Robinson, Captain R. Dale, Lieutenant LeRoy Hunter, and Lieutenant Shannon Brooks as defendants in this action. Plaintiff does not indicate whether those defendants are being sued in their

official capacities, their individual capacities, or both. However, regardless of plaintiff's intent, no claim has been properly stated against the defendants in any capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, official-capacity claims against these defendants would in reality be claims against the local governmental entity they serve, i.e. the St. Charles Parish Sheriff's Office. The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy

or custom, and, therefore, no official-capacity claim has been properly stated against any of these defendants.

To the extent that plaintiff intended to assert individual-capacity claims against these defendants, he has again failed to state a proper claim. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff makes no factual allegations whatsoever against Warden John Nowak, Sheriff Greg Champagne, Assistant Warden Alvin Robinson, Captain R. Dale, Lieutenant LeRoy Hunter, or Lieutenant Shannon Brooks, much less allege that they were in any way personally involved in the events or conditions giving rise to plaintiff's claims. Therefore, no individual-capacity claim has been properly stated against any of these defendants.[5]

In any event, out of an abundance of caution, the Court will also note that plaintiff's underlying claims are also subject to dismissal for the following reasons even if the claims are considered on the merits.

---

[5] Moreover, Court notes that these defendants cannot be held vicariously liable for the actions of others pursuant to 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

IV.  Plaintiff's Claims

A.  Administrative Remedy Procedure

In his first claim, plaintiff alleges that the jail does not have an adequate administrative remedy procedure for inmate complaints.  Even if that is true, it is of no moment.  Inmates do not have a constitutional right to an adequate and effective grievance procedure.  See Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

B.  Searches

Plaintiff's second claim is that searches are conducted without the prisoners or dorm representative being present.  Even if that is true, the claim is frivolous.  An inmate has no constitutional right to be present during such searches.  Bell v. Wolfish, 441 U.S. 520, 555-57 (1979); see also Block v. Rutherford, 468 U.S. 576, 589-91 (1984); Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *7 (E.D. La. Oct. 16, 2008); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *6 (E.D. La. May 10, 2007).

C.  Haircuts

Plaintiff's third claim is that the prison barber is unlicensed and inmates are charged for haircuts.  However, the federal constitution requires neither that prisons use only licensed barbers

9

nor that non-indigent inmates be provided with free haircuts. On the contrary, it is clear that such prisoners may be charged for all manner of services and supplies they receive. See, e.g., Cotner v. Knight, No. 95-6105, 1995 WL 441408, at *13 (10th Cir. July 21, 1995) (non-indigent inmates may be charged for photocopies and postage); Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009) (non-indigent inmates may be charged for hygiene supplies); Coleman v. Whitney, Civil Action No. 06-2285, 2006 WL 3791316, at *2 (E.D. La. Dec. 21, 2006) (non-indigent inmates may be charged for medical services); Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. 1996) (same).

The Court also notes that, in connection with this claim, plaintiff alleges that prisoners in state prisons are not required to pay for haircuts. To the extent that plaintiff may be attempting to assert an equal protection claim, the Court, out of an abundance of caution, notes that no such claim has been properly stated.

To state an equal protection claim, a plaintiff's allegations must have two prongs: (1) "that he received treatment different from that received by similarly situated individuals" and (2) "that the unequal treatment stemmed from a discriminatory intent." Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). In this case, plaintiff fails to satisfy either prong.

As to the first prong, plaintiff's allegations are clearly insufficient. In asserting his claim, plaintiff compares himself and the conditions of his confinement to prisoners in Louisiana state prisons and the conditions of their confinement. However, that is not the relevant comparison for equal protection purposes. Because plaintiff has no right to be housed in a state prison, any comparison to prisoners in Louisiana state prisons and the conditions of their confinement is

irrelevant. Rather, for equal protection purposes, the only relevant comparison is whether he is treated differently than persons "similarly situated," and the only such persons in that category are his fellow inmates at the St. Charles Correctional Center. See Treece v. Andrews, No. 05-30895, 2006 WL 2686676, at *1 (5th Cir. Sept. 20, 2006); Woods v. Collins, No. 95-10432, 1995 WL 581879, at *2 (5th Cir. Sept. 21, 1995); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995); Hill v. Stephens, Civ. Action No. 08-5233, 2009 WL 1808596, at *2 (E.D. La. Jun. 18, 2009); Hymel v. Champagne, No. 07-450, 2007 WL 1030207, at *2 (E.D. La. Mar. 28, 2007); Santos v. Louisiana Department of Corrections Secretary, Civ. Action No. 95-4215, 1996 WL 89260, at *5 (E.D. La. Feb. 28, 1996). Because plaintiff does not allege that he is treated differently than those prisoners, he has stated no cognizable equal protection claim.

Further, his claim also fails at the second prong. As to that prong, "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of ... the adverse impact it would have on an identifiable group." United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); see also Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). Plaintiff makes no allegation that he is a member of an identifiable group, much less that the different treatment in this case stemmed from an intent to discriminate against him based on his membership in that group. That alone is fatal to his claim. See, e.g., Duhr v. Collins, No. 93-8169, 1994 WL 122213, at *3 (5th Cir. Mar. 24, 1994); Hill, 2009 WL 1808596, at *3 . Further, "in the absence of an allegation of discriminatory motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief based on the denial of equal protection."

11

Stevenson v. Louisiana Board of Parole, No. 01-30252, 2001 WL 872887, at *1 (5th Cir. July 11, 2001).

### D. Overcrowding

In his fourth claim, plaintiff complains that his dorm is overcrowded. However, the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."); Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July 13, 2009); Thompson v. Stalder, Civ. Action No. 06-659, 2008 WL 874138 (M.D. La. April 1, 2008) ("[T]he law is clear that the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that such a claim, without more, does not violate an inmate's constitutional rights."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007).

The Court also notes that plaintiff states in conclusory fashion that the overcrowding poses a fire hazard. To the extent that he is perhaps contending that the overcrowding violates state and federal fire codes, any such contention is insufficient to transform his allegations into a colorable claim. Such codes are not determinative for this Court's purposes, in that the minimum *constitutional* standards are the only applicable measures for Eighth Amendment claims. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 322 (5th Cir. 2008) ("While fire and electrical codes can be helpful in determining whether a lack of fire safety can constitute a violation

of the Eighth Amendment, they are not determinative, and the Eighth Amendment does not require that prisons meet fire and electrical codes. [Where a prisoner does] not allege that anyone had been injured by any type of fire or that [the jail] was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim." (citations omitted)); see also Sampson v. King, 693 F.2d 566, 569 (5th Cir. 1982); Jernigan v. Dretke, Civ. Action No. H-04-4672, 2005 WL 1185627, at *3 (S.D. Tex. Apr. 29, 2005).

### E. Ventilation

In his fifth claim, plaintiff alleges that the dorm ventilation is inadequate. However, such conclusory claims of inadequate ventilation, without more, implicate no federal constitutional right. Johnson, 281 Fed. App'x at 321; Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Parker v. Smith, No. 93-5542, 1994 WL 198944, at *2 (5th Cir. May 6, 1994); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009).

### F. Shared Housing

Plaintiff's sixth claim challenges the prison's practice of confining both convicted inmates and pretrial detainees in the same dorm. However, it is not *per se* unconstitutional to house pretrial detainees and convicted inmates together. United States Magistrate Judge Joseph C. Wilkinson, Jr., in an opinion subsequently adopted by United States District Judge Carl Barbier, explained:

> In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981), the Fifth Circuit stated that
>
>> [t]he confinement of pretrial detainees *indiscriminately* with convicted persons is unconstitutional unless such a practice is 'reasonably related to the *institution's interest in maintaining jail security,*' or physical facilities do not permit their separation. *Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security*

13

> *measures is warranted ....* Nonetheless, pretrial detainees have a due process right to be considered individually *to the extent security and space requirements permit*.

Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added). Thus, the Fifth Circuit in Jones recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, Pembroke v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.

Significantly, the classification of inmates is an administrative function of the prison. Jones, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Jones, 636 F.2d. at 1374.

McKay v. Terrebonne Parish Sheriff's Office, Civ. Action No. 06-5570, 2007 WL 163059, at *4-5

(E.D. La. Jan. 17, 2007) (footnote omitted); see also Bland v. Terrebonne Parish Criminal Justice

14

Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *4-5 (E.D. La. Oct. 23, 2009). Here, plaintiff alleges neither that such housing decisions are made indiscriminately without justification nor that the decisions are not reasonably related to the institution's interest in maintaining jail security.

In any event, the general policy favoring such status-based segregation is to protect the pretrial detainees from the perhaps more dangerous convicted inmates, not *vice versa*. Plaintiff is a *convicted inmate*,[6] and he certainly has no colorable claim arising from the fact that he is housed with detainees.

### G. Medical and Dental Treatment

Plaintiff's seventh claim is that indigent inmates are denied medical treatment. It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). However, plaintiff does not allege that *he* personally has *ever* been denied such medical or dental care due to insufficient funds, and he lacks standing to pursue a claim on behalf of other prisoners. Miller v. Conway, 331 Fed. App'x 664, 665 (11th Cir. 2009); Reeves v. Collins, No. 94-10182, 1994 WL 559050, at *2 (5th Cir. Sept. 23, 1994); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Sims v. Kitchen, Civ. Action No. 8:08-cv-1049, 2009 WL 363619, at *4 (D.S.C. Feb. 10, 2009).

---

[6] See Rec. Doc. 1, p. 3, § III(A).

## H. Unsaintary Conditions

Plaintiff's eighth and eleventh claims allege that prisoners are forced to live in unsanitary conditions.

Admittedly, there is a point beyond which a prison cell's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, the conditions alleged by plaintiff clearly do not rise to that level. Simply because his dorm is less sanitary than he would like does not render the conditions unconstitutional. See Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

As to plaintiff's contention that prisoners must drink from "unsanitary" water fountains and coolers, that conclusory allegation, even if true, does not rise to the level of a constitutional violation, especially where no physical harm has resulted. See, e.g., Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003).

As to plaintiff's contention that the restroom is four feet from the dining area, that contention likewise states no colorable claim. The fact that inmates must eat in the same vicinity as the toilet may be unpleasant but it is not unconstitutional. See, e.g., Hill v. Smith, Civ. Action No. 09-0811, 2010 WL 148272, at *6-7 (W.D. La. Jan. 12, 2010); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007).

Lastly, as to plaintiff's contention that the toilets leak, "[l]leaky toilets and puddles are unpleasant but not unconstitutional." Smith v. Melvin, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. July 26, 1996) (unpublished); see also Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

### I. Lack of Programs for Convicted Prisoners and Adequate Legal Advisors

Plaintiff's ninth and tenth claims are that jail does not offer educational and rehabilitative programs for convicted prisoners. This claim is frivolous because there is no constitutional right to educational or rehabilitative services or programs in prison. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009); Oglesby v. Gusman, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); Sampson v. Corrections Corporation of America, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009); Wilbon v. Gusman, Civ. Action No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006).

In his ninth claim, plaintiff also states without explanation: "Poor Legal Advisors." These conclusory three words fail to state a proper claim. It is clear that inmates have a constitutional right of meaningful access to the courts, which includes a right of access to law libraries or assistance from legally trained personnel necessary to file nonfrivolous legal claims challenging their convictions or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). However, claims alleging violations of the right of access to courts are not cognizable unless the inmate's position as a litigant was prejudiced by the denial of access. See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir.

1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). Plaintiff has not alleged that the has suffered any prejudice whatsoever from the purported poor quality of the legal advisors, and "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 351 (1996).

### J. Bunk Beds

As his twelfth claim, plaintiff contends that it is unsafe for the jail to use bunk beds. As an initial matter, this claim is purely conclusory, and conclusory allegations are insufficient to support a civil rights claim. See, e.g., Richards v. Johnson, 115 Fed. App'x 677, 678 (5th Cir. 2004); Arnaud v. Odom, 870 F.2d 304, 307 (5th Cir. 1989). Second, bunk beds are used throughout society, in places ranging from children's bedrooms to military barracks, and there is no evidence that they are inherently dangerous.

### K. Retaliation

Plaintiff's final claim as that he was denied the opportunity to be screened for trusty status and access to education programs in retaliation for having filed administrative grievances at the jail. The United States Fifth Circuit Court of Appeals has noted that such retaliation claims must be "regarded with skepticism." See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted). Therefore, prisoners are required to allege an adequate factual basis for a retaliation claim. It is clear that purely conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are insufficient. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints); see also Jackson v. Mizzel, No. 09-30667, 2010 WL 183490, at *3 (5th

Cir. Jan. 20, 2010); White v. Fox, 294 Fed. App'x 955, 963 (5th Cir. 2008); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *6 (E.D. La. Aug. 25, 2009); Hill v. Stephens, Civ. Action No. 08-5233, 2009 WL 1808596, at *4 (E.D. La. Jun. 18, 2009); George v. Cain, Civ. Action No. 07-986, 2007 WL 1428744, at *6 (E.D. La. May 10, 2007).

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and for otherwise failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

New Orleans, Louisiana, this first day of February, 2010.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.